UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

RICK R. CRECELIUS,

    Plaintiff,

v.                                                    Case No:   2:17-cv-320-FtM-99CM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## REPORT AND RECOMMENDATION[1]

Plaintiff Rick R. Crecelius seeks judicial review of the denial of his claims for disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the Joint Memorandum (Doc. 17),[2] and the applicable law. For the reasons discussed herein, the Court recommends the decision of the Commissioner be affirmed.

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. In order to expedite a final disposition of this matter, if the parties have no objection to this Report and Recommendation, they promptly may file a joint notice of no objection.

[2] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

I.  **Issues on Appeal**[3]

Plaintiff raises three issues on appeal: (1) whether the administrative law judge ("ALJ") adequately addressed Plaintiff's right leg impairment and obesity in determining his residual functional capacity ("RFC"); (2) whether the ALJ properly assessed Plaintiff's credibility; and (3) whether the ALJ's RFC finding adequately accounts for Plaintiff's manipulative limitations.

II.  **Procedural History and Summary of the ALJ's Decision**

On July 25, 2013, Plaintiff filed an application for DIB, alleging his disability began January 1, 2013, due to essential tremors, high blood pressure and arthritis in both legs. Tr. 90, 100, 186–91. Plaintiff's DIB claim was denied initially and upon reconsideration. Tr. 98, 100, 114–17, 119–24. On March 6, 2014, Plaintiff requested a hearing before an ALJ. Tr. 125. Prior to the hearing, Plaintiff amended his alleged onset date to April 24, 2014. Tr. 215. ALJ William G. Reamon held a hearing on January 20, 2016, during which Plaintiff and Vocational Expert Jeffrey B. Barrett testified. Tr. 33–89. On May 12, 2016, the ALJ found Plaintiff not disabled through the date of his decision. Tr. 26.

At step one, the ALJ found Plaintiff "meets the insured status requirements of the Social Security Act through September 30, 2016." Tr. 19. The ALJ determined Plaintiff has not engaged in substantial gainful activity since his amended alleged

---

[3] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

onset date, April 24, 2014.  *Id.*  Next, the ALJ found that Plaintiff has severe impairments of essential tremors, status-post left lower extremity fractures/surgeries with residual arthrosis of the tibiotalar joint and suprapatellar joint region with bone infarction in the proximal tibial metaphyseal region, a fracture of the right femoral shaft with intramedullary nailing, and obesity.  *Id.*

The ALJ concluded Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 21.  The ALJ then determined Plaintiff has the residual functional capacity ("RFC") to perform light work[4] with certain limitations, including never climbing ladders, ropes and scaffolds; only occasionally kneeling, crouching and crawling, and climbing ramps and stairs; and frequently handling and fingering.  Tr. 22.  Next, the ALJ found Plaintiff can perform his past relevant work as a sales attendant.  Tr. 25.  As a result, the ALJ found that Plaintiff is not disabled.  Tr. 26

---

[4] The regulations define light work as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.  If someone can do light work, [it is determined] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on May 9, 2017. Tr. 1. Accordingly, the May 12, 2016 decision is the final decision of the Commissioner. Plaintiff filed an appeal with this Court on June 12, 2017. Doc. 1. The matter is now ripe for review.

## III.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).[5] Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citation

---

[5] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments. *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c, 404.1527, (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016). The Court will apply rules and regulations in effect at the time of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 404.1527, (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

omitted). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

### IV. Discussion

#### a. Whether the ALJ adequately addressed Plaintiff's right leg impairment and obesity in his RFC assessment

When the ALJ finds that an impairment does not meet or equal a listed impairment at step three, the ALJ then will proceed to step four to assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record. Tr. 21–22; 20 C.F.R. § 404.1520(e). For these purposes, relevant evidence in the record includes any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a). The claimant's age, education and work experience, and whether he can return to his past relevant work also are considered in determining his RFC. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)). The RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite his impairments.

*Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis,* 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)). The ALJ also "must consider all allegations of physical and mental limitations or restrictions," not just those determined to be severe. SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996); *see* 20 C.F.R. § 404.1545(a)(2); *Gibson v. Heckler,* 779 F.2d 619, 622–23 (11th Cir. 1986). The ALJ is required to consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings as to the effect of the impairments and whether they result in disability. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (citing *Bowen v. Heckler,* 748 F.2d 629, 635 (11th Cir. 1984)).

SSR 02-1p explains that "[o]besity is a complex, chronic disease characterized by excessive accumulation of body fat. Obesity is generally the result of a combination of factors (e.g., genetic, environmental, and behavioral)." SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002). Further, "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." *Id.* at *1. The ALJ should "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's [RFC]." *Id.* On the other hand, the ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record." *Id.* at *6.

Plaintiff argues the ALJ erred in failing to find any limitations in Plaintiff's ability to stand and walk despite his leg impairment—the fracture of his right femoral shaft with intramedullary nailing—and his obesity. Doc. 17 at 10–11. Plaintiff argues the ALJ explicitly excluded any limitations as to these two impairments because state agency medical consultant Debra Troiano, M.D. did not find any such limitations. *Id.* at 11. Plaintiff concludes this was error because the fracture and its surgical repair did not occur until after Dr. Troiana completed her review. *Id.* Plaintiff further argues this error was harmful because, as Plaintiff testified, he was having great difficulty standing and walking while working part time. *Id.* (citing Tr. 43–44). If the ALJ had properly considered this impairment, Plaintiff concludes he would have found Plaintiff unable to complete an 8-hour workday. *Id.* at 12.

The Commissioner responds that the ALJ explicitly recognized Plaintiff's obesity and considered the effects of his "overall body habitus in establishing" Plaintiff's RFC. *Id.* (quoting Tr. 22). The Commissioner argues the ALJ also considered the evidence related to Plaintiff's leg surgery in 2014, after which he returned to his part-time work at Home Depot in September or October of that year. *Id.* at 13. The Commissioner notes, as the ALJ did, that this work involved a lot of standing and walking. *Id.* (citing Tr. 24, 79–80). The Commissioner argues Plaintiff was encouraged to exercise by his primary care physician and reported doing so. *Id.* (citing Tr. 368, 373, 283, 388). The Commissioner argues Plaintiff has not shown that he had greater limitations than the ALJ's RFC. *Id.* She further

contends the ALJ included postural and work conditions limitations that accounted for both Plaintiff's leg and obesity impairments. *Id.* at 14.

The Court recommends substantial evidence supports the ALJ's RFC determination, and he did not err in declining to find further limitations based on Plaintiff's obesity and right leg impairment. Regarding Plaintiff's obesity, the ALJ explicitly stated he considered it in determining Plaintiff's RFC. Tr. 22. The ALJ later explained how he considered it:

> Additionally, the undersigned has taken into consideration [Plaintiff's] obesity at current height/weight of 6'0 and 240 pounds and corresponding BMI of 35.9. The undersigned finds that the obesity could reasonably exacerbate pain in the weight-bearing joints to the extent of limiting [Plaintiff] to at most, primarily occasional postural activities.

Tr. 24–25 (internal citations omitted) (citing Tr. 369). Although the cited record indicates Plaintiff's weight was 272 pounds[6] and his height was 73 inches (6'1"), the ALJ correctly noted Plaintiff's BMI[7] was 35.9 and considered him to be obese. Tr. 24, 369. The ALJ accounted for this condition, namely the increased weight affecting Plaintiff's joints, by limiting him to only occasionally climbing ramps and stairs, kneeling, crouching and crawling, and never climbing ladders, ropes and scaffolds. Tr. 22, 24.

---

[6] Plaintiff's exact weight at the time of the ALJ's decision is unclear. Plaintiff testified at the hearing that his current weight was 240, which reflects that he recently lost some weight. Tr. 45.

[7] Body Mass Index ("BMI") is "the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m$^2$). For adults, both men and women, the Clinical Guidelines describe a BMI of 25–29.9 as 'overweight' and a BMI of 30.0 or above as 'obesity.'" SSR 02-1p, 2002 WL 3486281, at *2 (Sept. 12, 2002).

As to Plaintiff's leg fracture, the ALJ reviewed his treatment reports reflecting a long trauma history to both legs ever since Plaintiff was in a motorcycle accident when he was 18. Tr. 23, 45. The ALJ noted Plaintiff had surgeries on both legs in 1990 and had hardware surgically removed some time in 2011. Tr. 23, 334. Nevertheless, his records reflected Plaintiff had "done well for 20 years." Tr. 23, 356, 358, 360. Plaintiff saw Patrick Leach, M.D. for pain in his right thigh that began in April of 2014 and had surgery (intramedullary nailing) to repair a fracture on May 17, 2014. Tr. 346–364. At his 2-week follow up visit, Dr. Leach indicated Plaintiff was healing well and could progress to weightbearing as tolerated. Tr. 347. At his 2.5-month follow up visit, Dr. Leach observed Plaintiff walking with mild antalgia but no pain on right hip rotation or right knee rotation. Tr. 346. Dr. Leach opined that he expected to see a slow resolution of the fracture and encouraged Plaintiff to continue to advance activities as he could tolerate. *Id.* Although Dr. Leach indicated Plaintiff should be seen for a third follow-up in two to three months, the record does not indicate Plaintiff saw Dr. Leach again. Tr. 24, 75, 346. Plaintiff returned to work in September or October of 2014 with a restriction that he lift no more than 20 pounds. Tr. 79–80.

Plaintiff suggests that substantial evidence could not support the ALJ's decision because he relied in part on Dr. Troiano's opinions even though Plaintiff's right leg fracture, the surgery to repair it, and his obesity occurred after her review. Doc. 17 at 11  The ALJ acknowledged the date of the fracture and surgery in his

decision, however, and he incorporated Dr. Leach's follow-up visits in his findings when he adopted Dr. Troiano's opinions, explaining:

> Additionally, the undersigned assigns great weight to the State agency medical consultant at the reconsideration level, to the extent that Dr. Troiano found [Plaintiff] capable [of] working in the category of light work with function-by-function limitations as articulated in the current residual functional capacity. This conclusion is found to be consistent with the recommendations of the [sic] Dr. Leach (treating physician), whom [Plaintiff] testified as instructing him to limit lifting to 20 pounds post-surgery. Moreover, Dr. Troiano has program knowledge and provides a detailed analysis of the relationship between the identifiable impairments (including [Plaintiff's] complaints of leg pain from prior bilateral lower extremity fractures) and the stated limitations.

Tr. 25 (internal citation omitted) (citing Tr. 105–08).

It is Plaintiff's burden to establish that his obesity and right leg impairment affect his ability to perform basic work activities. *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of a 'deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."). Although Plaintiff suggests his leg impairment affects his ability to stand and walk, Plaintiff provides no physician's opinion that either impairment causes any additional limitations on his RFC. Doc. 17 at 10–12. He also does not show how his obesity or his right leg impairment affects his RFC beyond what the ALJ found in his decision. *Id.* Accordingly, the Court recommends the ALJ properly evaluated the effect of Plaintiff's obesity and right leg impairment on his RFC.

### b. Credibility

The Eleventh Circuit long has recognized that "credibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)). If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of a claimant's alleged symptoms and their effect on the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(1); *Wilson v. Barnhart*, 284 F.3d 1219, 1225–266 (11th Cir. 2002); *Foote*, 67 F.3d at 1561. The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause. *See* 20 C.F.R. § 404.1529(c)(1).

"If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted). "The question is not . . . whether [the] ALJ could have reasonably credited [a claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

Plaintiff argues the ALJ failed to provide any discussion explaining why he did not accept Plaintiff's testimony as true regarding his pain levels, inability to stand and walk for prolonged periods, or complete a full 8-hour workday. Doc. 17 at 16. Plaintiff argues the ALJ relied too heavily on one treatment noted dated October 8, 2015, which indicated Plaintiff reported an improvement in pain and tremors while taking the medication Lyrica. *Id.* (citing Tr. 24). Plaintiff argues this was erroneous because he testified at the hearing that Lyrica made him sick to his stomach and he had to stop taking it, which is reflected by his most recent treatment note indicating he was no longer prescribed Lyrica. *Id.* (citing Tr. 382). Thus, Plaintiff argues the treatment note reflects only transient improvement, which is not supported by the record as a whole and is insufficient to discredit his testimony. *Id.*

Plaintiff also argues the ALJ discredited him based on a failure to seek follow-up treatment, but he testified he did not have health insurance and could not afford further care, which the ALJ failed to consider. *Id.* at 16–17. Plaintiff concludes the ALJ provided no other reasons for discrediting his testimony, which he argues was consistent with his reports to his doctors and his inability to work full time. *Id.* at 17. Instead, Plaintiff argues the ALJ selectively focused on records that would support his findings to the exclusion of evidence that would support Plaintiff's testimony. *Id.*

The Commissioner responds the ALJ properly evaluated Plaintiff's credibility because he identified evidence supporting his findings. *Id.* at 19. The Commissioner suggests Plaintiff's testimony regarding his inability to afford

treatment was not credible because he worked 15 to 20 hours per week, lived rent free with his ex-wife and could afford a smoking habit. *Id.* at 20. Regardless, the Commissioner argues the ALJ relied on other factors than his failure to follow up with Dr. Leach to discredit his testimony—namely the objective findings on examination, statements from Plaintiff's medical providers that he was improving, and his ability to go back to work four to five months after his surgery. *Id.*

Plaintiff testified that he began working part time as a sales associate for Home Depot in 2013 and continued to do so as of the date of the hearing.[8] Tr. 39, 49. He works an average of 15 to 20 hours a week. Tr. 40. His position requires him to stand on his feet pretty much all day. *Id.* It was in this role at Home Depot that he fractured his right leg over several months in 2014 until he could not put any weight on it and had to have emergency surgery. Tr. 43–44. The ALJ asked Plaintiff:

> Q: Okay. So, after that surgery, and it looks like that was done in May, how have you done since then?
>
> A: Not real well. They diagnosed me awhile back with essential tremors.
>
> Q: Well, I'm talking about with regard to your leg? How is that - -
>
> A: Not real well. It - - today, for instance, the pain level is probably seven to eight.
>
> Q: Okay.
>
> A: Cold weather is really bad; stairs is really tough.

---

[8] Plaintiff had another job performing maintenance at a rehabilitation center beginning on November 18, 2014, for four to five months, before returning to work for Home Depot. Tr. 40.

Tr. 44–45. Plaintiff further testified he typically works three to four days a week in 4 to 6-hour shifts, but the 6-hour shifts are "really rough" on him. Tr. 59. He testified he begins to feel aching through both of his legs and feet within an hour and a half of starting a shift. Tr. 60.

Plaintiff's tremors in his head and hands become more pronounced the longer he is on his feet. Tr. 61. Plaintiff testified that the tremors started a couple years after the original accident, and the treatment has not helped as the tremors have worsened, and he cannot hide them anymore. Tr. 62–63. Plaintiff testified the medications his doctor prescribed (propranolol and Topamax) at the Family Health Centers are not helping although they gave him some temporary relief in the past. Tr. 63–64. Plaintiff testified he has taken gabapentin and Lyrica, which made him sick to his stomach, so he was unable to take enough of the medication to see any relief. Tr. 67–68.

The ALJ also questioned Plaintiff as to any limitations Dr. Leach placed on his physical activities at his last follow-up visit:

> Q: All right. Did he put any limitations on your physical activities when you last saw him; restrictions?
>
> A: He - - on paper, no.
>
> Q: Well, how about verbally?
>
> A: He told me I should be smarter.
>
> Q: Well - -
>
> A: See, you got to understand Dr. Leach. I didn't have insurance and I was, by the grace of God, got lucky enough, got somebody

>   that was smart enough to be able to put me back together again.
>   He knew what to do and I trust the man and he said, if I ever
>   needed him again, that he'd be there for me.
>
> Q:   Well, besides telling you that you should be smarter, did he put
>      any limits on how much you can lift?
>
> A:   He didn't want me lifting over 20 pounds.
>
> Q:   And did he verbalize that to you?
>
> A:   Yes.

Tr. 74. Plaintiff testified that he had not seen Dr. Leach after his August 2014 visit "because of insurance and no money." Tr. 75. He also testified he sometimes uses a crutch for pain, as recently as a week ago. *Id.*

The Court recommends substantial evidence supports the ALJ's credibility findings. The ALJ relied primarily on the objective medical evidence and the treatment and medications Plaintiff received, which are appropriate considerations. Tr. 22–25; 20 C.F.R. § 404.1529(c)(1). The ALJ provided a bullet-pointed summary of Plaintiff's testimony regarding his symptoms, indicating he thoroughly considered Plaintiff's symptoms. Tr. 23. The ALJ partially credited Plaintiff's testimony, explaining;

>   [C]onsidering [Plaintiff's] alleged issues with overall pain and weakness
>   due to the ongoing presence of tremors, as well as the reported tendency
>   for his conditions to be aggravated by cold temperatures, the portion of
>   the [RFC] pertaining to extreme cold and humidity, as well as the need
>   to avoid hazards is supported.

Tr. 25. Contrary to Plaintiff's argument that the ALJ merely summarized Plaintiff's medical evidence of record, some of the notes the ALJ highlighted contradicted Plaintiff's testimony. Although Plaintiff testified to his pain in both legs, the ALJ

noted that, on examination by Michael Pfeffer, M.D., Plaintiff's left leg strength was 4/5 and physical examination findings were mild, with no range of motion abnormalities in any major joint or spinal region.[9]  Tr. 25, 315.

Plaintiff also is incorrect that the ALJ focused significantly on his noncompliance to discredit him without considering his inability to pay for treatment. Doc. 17 at 16–17.  The Eleventh Circuit repeatedly has held that a claimant's inability to afford treatment excuses noncompliance with recommended courses. Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988).  When the claimant cannot afford the prescribed treatment, and there is no other way to obtain it, he is excused from noncompliance.  Id.  "Where the ALJ did not rely significantly on the claimant's noncompliance, however, the ALJ's failure to consider evidence regarding the claimant's ability to afford her prescribed treatment does not constitute reversible error."  Bellew v. Acting Comm'r of Soc. Sec., 605 F. App'x 917, 921 (11th Cir. 2015).

Unlike Dawkins, the ALJ here did not rely primarily on Plaintiff's noncompliance to discredit him.  Although the ALJ observed Plaintiff did not follow up with Dr. Leach as intended, it does not appear he discredited Plaintiff based on noncompliance but rather noted his significant improvement between his first follow up appointment in June and his second in August, in which Dr. Leach encouraged Plaintiff to advance his activities.  Tr. 24, 346.  Indeed, Dr. Leach cleared him to return to a position involving extensive standing and walking with the sole limitation

---

[9] Dr. Pfeffer examined Plaintiff on October 28, 2013.  Tr. 313.  The ALJ appropriately did not rely on any findings Dr. Pfeffer made regarding the right leg because of the subsequent fracture and surgery.  Tr. 25.

that he could not lift more than 20 pounds. Tr. 74. Because he returned to work without restrictions that would be consistent with his alleged limitations, it was reasonable for the ALJ to conclude that Plaintiff's condition continued to improve despite his testimony to the contrary. Similarly, the ALJ noted that Plaintiff's tremors were being treated in 2013 and 2014 and appeared to be under control with medication (Propranol) by 2015, which contradicted Plaintiff's testimony that his symptoms were worsening. Tr. 24, 63, 382.

To the extent treatment notes exist that may contradict some portions of the evidence relied upon by the ALJ,[10] "when there is credible evidence on both sides of an issue it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly." *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (citing *Richardson*, 402 U.S. at 389–403). The record reveals no reversible error in the ALJ's assessment of Plaintiff's credibility concerning the intensity and persistence of Plaintiff's symptoms and their limiting effects on Plaintiff's ability to work because the ALJ was not "clearly wrong to discredit" Plaintiff's testimony. *Werner*, 421 F. App'x at 939. The ALJ sufficiently compared Plaintiff's statements with his treatment and objective medical evidence and found his statements to be only partially credible as reflected in the

---

[10] For example, the ALJ cited medical records that included an equivocal treatment note dated December 16, 2013, documenting no side effects on medication, but that Lyrica had upset Plaintiff's stomach in the past. Tr. 325. Plaintiff also cites a record from October 8, 2015, that does not list Lyrica as a current medication. Doc. 17 at 16. That same treatment note, however, includes a plan to *increase* Plaintiff's dosage of Lyrica to 75mg. Tr. 384.

RFC. Therefore, the Court recommends declining to disturb the ALJ's credibility findings. *Foote*, 67 F.3d at 1562.

### c. Whether the ALJ properly evaluated Plaintiff's manipulative limitations in determining Plaintiff's RFC

Plaintiff argues the ALJ's mild limitation of frequent handling and fingering with the upper extremities is inconsistent with his finding that Plaintiff's essential tremors were a severe, medically determinable impairment. Doc. 17 at 24. Plaintiff argues this is inconsistent with a finding in the record that shows Plaintiff's tremors have been found to be a marked, rather than mild, limitation. *Id.* at 25 (citing Tr. 315). Plaintiff asserts the ALJ's citation of treatment notes indicating Plaintiff's tremors were under better control ignored a report in September of 2015 that Plaintiff's symptoms were not well controlled and his return visit the following month for reevaluation of the tremors because they were worsening. *Id.* (citing Tr. 382, 386). Plaintiff further argues the ALJ's finding is inconsistent with Plaintiff's testimony that he could not lift and carry objects throughout his shift. *Id.* at 25–26. Plaintiff contends the ALJ's determination was illogical because Plaintiff left a higher paying job to work part-time at Home Depot due to his limitations. *Id.*

The Commissioner responds that Plaintiff had hand tremors prior to his alleged onset date yet Dr. Pfeffer observed he had full 5/5 grip strength. *Id.* (citing Tr. 315). The Commissioner acknowledges the September 2015 progress note that Plaintiff's symptoms were uncontrolled but noted Plaintiff reported "feeling fine" at that same visit. *Id* at 26–27 (citing Tr. 24, 387). The Commissioner also points out,

as the ALJ observed, Plaintiff's symptoms were controlled, and his tremors and pain were better at his follow-up visit in October 2015.  *Id.* at 27 (citing Tr. 24, 382).

The Court recommends substantial evidence supports the ALJ's RFC finding as it relates to Plaintiff's manipulative limitations.  The ALJ relied on the findings of state agency consultant Debra Troiano, M.D., who opined Plaintiff was limited to frequent handling and fingering because his tremors were found to be mild in primary care examinations, diminished with beta blockers, and his grip strength was 5/5.  Tr. 107, 315.  Plaintiff does not challenge the ALJ's decision to give great weight to Dr. Troiano's opinions, but he contends that the tremors worsened significantly over the next couple of years.  Doc. 17 at 24–26.  As discussed above, however, the ALJ discredited Plaintiff's testimony that his symptoms overall were worsening and/or were not controlled with medication.  Tr. 24.  The ALJ accounted for the marked intention tremors observed in Dr. Pfeffer's consultative examination of Plaintiff by limiting Plaintiff's handling and fingering to frequently.  Tr. 24, 315.  Although there are conflicting treatment notes from Plaintiff's treating physician regarding Plaintiff's side effects and effectiveness of his medications, as noted above, the ALJ's decision to rely on the overall impression that Plaintiff's symptoms were controlled and improving was a reasonable one.  Tr. 325–28, 368–78, 382–84, 386–88.  The Court therefore recommends substantial evidence supports the ALJ's RFC finding as to Plaintiff's manipulative limitations.

### III. Conclusion

Upon review of the record, the undersigned recommends that the ALJ applied the proper legal standards, and his determination that Plaintiff was not disabled through the date of the decision is supported by substantial evidence. ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.   The decision of the Commissioner be **AFFIRMED.**

2.   The Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ENTERED** in Fort Myers, Florida on this 26th day of July, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record